WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Worrell,<br><br>      Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>      Respondents. | CIV 13-1683-PHX-PGR (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT COURT:

      On August 15, 2013, Petitioner William Worrell, who is confined in the Arizona State Prison-Central Arizona Correctional Facility in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In an Order dated October 15, 2013, the Court dismissed the Petition for failure to use the court-approved form and granted Petitioner 30 days to file an amended petition. On November 14, 2013, Petitioner filed an Amended Petition (Doc. 5) and Memorandum in Support of Amended Petition (Doc. 6). Respondents filed an Answer on April 18, 2014 (Doc. 15), and Petitioner filed a Reply on May 9, 2014 (Doc. 16).

\\\
\\\
\\\
\\\

# BACKGROUND[1]

On January 25, 2005, the La Paz Grand Jury indicted Petitioner for one count of sexual conduct with a minor, a class two felony and dangerous crime against children (Count 1), and one count of child molestation, a class two felony and dangerous crime against children (Count 2). (Exh. A.) The Arizona Court of Appeals summarized the facts underlying Petitioner's convictions and sentences as follows:

> On December 30, 2004, seven-year-old Bodhi's parents asked Worrell to baby-sit the boy at their home outside Parker. Bodhi had been asleep in his bedroom until he woke to find Worrell lying on the bed. Worrell had Bodhi's "pee" in his hands, sucking on it "like on a baby bottle." Some of Worrell's "slobber" got on Bodhi's penis, and, according to Bodhi, it got "a little bit more wet" and then "hard and then it got softer." Worrell then rubbed Bodhi's penis with Bodhi's underwear, told Bodhi to put the underwear on and left, saying to Bodhi not to tell his parents because "he didn't want to go in a big problem . . . [or] get inside jail."
>
> When Bodhi's parents returned home that evening, Bodhi informed them "that [Worrell] had sucked on his pee-pee" and that "he wiped his slob off on the underwear." They took Bodhi's underwear to police in New Mexico, where they also had a home.
>
> Worrell was charged with sexual conduct with a minor (Count 1) and child molestation (Count 2), each a class 2 felony and dangerous crime against a child. At trial, Tina Gore, a criminalist from the Arizona Department of Public Safety Crime Lab DNA Unit, testified that she had identified bodily fluids on a piece of Bodhi's underpants as urine and amylase, an enzyme found in saliva. A second criminalist, Dawn Warnock, testified that she had analyzed human DNA taken from the underpants and found a mixture that contained DNA from more than one person. The major component of the mixture matched the DNA profile derived from Worrell's buccal swab. She also testified that the approximate incidence of Worrell's DNA profile was "1 in 9.3 trillion Caucasians," which, she explained, signified that, if she tested 9.3 trillion Caucasians at random, she would expect to find that the profile occurred "one time."
>
> Worrell also testified and offered no explanation for why his saliva was on Bodhi's underwear. He maintained that Bodhi had been awakened by the family dog when the dog had entered the house and that Bodhi had accused him of molesting him because he had yelled at Bodhi to go back to bed. Worrell explained that Bodhi's parents supported their son's accusations because of a dispute over payment for work on their house.

(Exh. P at 2-3, ¶¶ 2-5) (internal footnote omitted).

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 15 – Respondents' Answer.

The jury found Petitioner guilty as charged. (Exh. ZZ at 166-67.) The jury also found two aggravating circumstances proven beyond a reasonable doubt: that the victim was of a "young age . . . at the time of the offense" and that "the defendant was in a position of authority over the victim at the time of the offense." (Id. at 173-74.) After an aggravation and mitigation hearing, the trial court found "the traumatic impact on the victim and parents" as an additional aggravating factor, and found "as [a] mitigating circumstance that the Defendant has no prior felony conviction[s]." (Exh. G; Exh. BBB at 3-30.) The trial court imposed an aggravated 25-year prison sentence for Count 1, and an aggravated 20-year prison sentence for Count 2. (Exh. G; Exh. BBB at 29-30.) The trial court ordered the sentences to run concurrently. (Exh. G; Exh. BBB at 30.)

Petitioner filed a timely notice of appeal on January 11, 2006. (Exh. H.) His appellate counsel filed an opening brief, raising the following issues:[2]

(1) "The State committed prejudicial prosecutorial misconduct when it cross examined [Petitioner] regarding the fact that he failed to take a polygraph examination and argued in closing remarks both [Petitioner]'s failure to take the polygraph examination and unproven uncharged prior bad acts from outside the record."

(2) "[Petitioner] was deprived of his right to pretrial notice in violation of the Fourteenth Amendment, U.S. Constitution, of the State's intention to seek an aggravated term and the facts it would seek to prove at trial to support the aggravated term."

(3) "The trial court committed fundamental error when it submitted two alleged aggravating circumstances to the jury without a jury instruction."

(Exh. I.) After receiving an extension of time, the State filed a response. (Exhs. J, M.) Petitioner filed a reply brief. (Exh. N.) Petitioner also filed a notice of supplemental authority, alerting the Court of Appeals to an additional Arizona case supporting the argument for his first issue. (Exh. O.) In a memorandum decision, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences, rejecting Petitioner claims. (Exh. P.)

---

[2] After his appellate counsel filed an opening brief, Petitioner moved to withdraw counsel and "proceed pro-per." (Exh. K.) The Arizona Court of Appeals denied the requests. (Exh. L.)

- 3 -

1  Petitioner filed a petition for review in the Arizona Supreme Court. (Exh. Q.) He
2  presented the first two issues he had presented to the Arizona Court of Appeals to the
3  Arizona Supreme Court. (Id.) The State filed a "Notice of Acknowledgment," and declined
4  to file a response because the issues were "adequately resolved against [Petitioner]'s position
5  on appeal." (Exh. R.) On May 3, 2007, the Arizona Supreme Court denied review. (Exh.
6  S.)

7  On May 11, 2007, Petitioner timely commenced a PCR proceeding by filing a PCR
8  notice. (Exh. V.) The trial court appointed PCR counsel. (Exhs. W, X.) After receiving
9  three extensions of time, appointed counsel filed a notice stating that, after reviewing the file
10 and corresponding with Petitioner, she was "unable to find any colorable claims for relief to
11 raise in this post-conviction proceeding." (Exhs. Y, Z.) She also requested an extension of
12 time for Petitioner to file a *pro se* PCR petition, which the trial court granted. (Exhs. Z-BB.)
13 After receiving five additional extensions of time (Exh. CC), Petitioner filed a *pro se* PCR
14 petition, raising several issues, including:

  (1) His trial counsel provided ineffective assistance in violation of his Sixth Amendment rights by:

  a. Failing to call witnesses;

  b. Failing to make certain objections at trial, including failing to object to prosecutor's comments which implied prior bad acts;

  c. Failing to recuse himself after he received "brain surgery"; and

  d. Failing to properly discuss plea offer with Petitioner.

  (2) He was denied due process rights under the Fifth and Fourteenth Amendments because:

  a. His trial attorney "failed to challenge any [of the] State's evidence, and object to any statements, or evidence introduced";

  b. His trial attorney "failed to call known witnesses in [Petitioner]'s favor"; and

  c. His trial attorney failed to inform him of all the evidence.

  (3) His "sentence exceeded that permitted by law, and is unconstitutionally cruel and unusual punishment under the Eighth Amend[ment]."

1  (Exh. DD.) The State responded, arguing Petitioner failed to state a colorable claim. (Exh.
2  EE.)  In response to his third claim, the State argued the defendant actually received an
3  illegally lenient sentence, noting he should have received a life sentence pursuant to A.R.S.
4  § 13-604.01(A).[3] (Id.) The State asked the trial court to summarily dismiss Petitioner's PCR
5  petition, or in the alternative, resentence Petitioner in accordance with § 13-604.01(A). (Id.)
6  Petitioner filed a reply. (Exh. FF.)

7  The trial court found Petitioner had failed to present colorable ineffective assistance
8  of counsel ("IAC") claims with regard to his trial counsel's alleged failure to call witnesses
9  and make objections at trial. (Exh. GG.) With regard to Petitioner's claim that his trial
10 counsel "was ineffective for not adequately advising him of the consequences of a conviction
11 following a trial versus accepting the plea agreement that was offered during pretrial motions
12 on the first day of trial," the court found that in light of the State's response, Petitioner had
13 "raised a colorable claim on this issue." (Id.) Specifically, it noted that when the plea offer
14 was discussed prior to trial, all parties "failed to take into consideration that the victim was
15 under twelve years of age, which mandates a sentence of life imprisonment with no
16 possibility of parole until thirty-five calendar years have been served." (Id.) The trial court
17 set the matter for a status hearing and appointed Petitioner counsel for this issue only. (Id.)
18 The trial court denied the PCR petition on the other IAC claims. (Id.)

---

[3] This section was recodified as A.R.S. § 13-705(A) in 2008. In 2004, when the crimes occurred, this section provided:

> A person who is at least eighteen years of age and who stands convicted of a dangerous crime against children in the first degree involving sexual assault of a minor who is twelve years of age or younger or sexual conduct with a minor who is twelve years of age or younger shall be sentenced to life imprisonment and is not eligible for suspension of sentence, probation, pardon, or release from confinement on any basis except as specifically authorized by section 31-233, subsection A or B until the person has served thirty-five years or the sentence is commuted. This subsection does not apply to masturbatory contact.

A.R.S. § 13-604.01(A) (West 2004).

- 5 -

1  The State moved for reconsideration. (Exh. HH.) It noted that when it had "broached
2  the issue of the life sentence in its response to the defendant's petition for review, the State
3  was incorrect in its assertion that the unlawfully shortened sentence was subject to review
4  or correction." (Id.) Even though Petitioner could have faced a greater sentence than
5  discussed during the consideration of the plea agreement, he was not sentenced to anything
6  greater than what he was advised at the hearing regarding the plea agreement. (Id.) Thus,
7  "[w]hile the sentence imposed was unlawfully lenient, the State's error in failing to timely
8  move for resentencing or to timely appeal the sentence rendered the issue moot and resulted
9  in the defendant having been given factually correct advice concerning his failure to accept
10 the plea offer at the time of trial." (Id.)

11      At a subsequent status hearing, the trial court re-appointed the original PCR counsel.
12 (Exh. II.) Appointed counsel filed a response to the State's motion for reconsideration,
13 arguing that because Petitioner received inaccurate advice, he was denied effective assistance
14 of counsel, and that the trial court should deny the State's motion for reconsideration. (Exh.
15 JJ.) On February 4, 2009, the trial court granted the State's motion for reconsideration and
16 stated it was "denying relief in this matter." (Exh. LL.) Petitioner did not file a motion for
17 rehearing or a petition for review with the Arizona Court of Appeals. (Exh. CCC.)

18      On November 9, 2012, Petitioner initiated a second PCR proceeding by filing a PCR
19 notice. (Exh. MM.) He raised one issue, arguing that he received an "unlawfully imposed
20 enhanced sentence based upon a jury's finding of two aggravating factors found under the
21 catch-all phrase of A.R.S. § 13-702." (Id.) The trial court appointed counsel to represent
22 Petitioner. (Exhs. NN, OO.) Petitioner attempted to file a *pro se* PCR petition in January
23 2013. (Exhs. QQ, RR.) It does not appear that the court accepted the filing, however,
24 because Petitioner was represented by counsel. (Exh. SS.) On June 26, 2013, after receiving
25 two extensions of time (Exh. TT), appointed counsel filed a notice that Petitioner was
26 abandoning his request for post-conviction relief (Exh. UU). The trial court accepted the
27 abandonment of the PCR proceeding. (Exh. VV.)

28

On August 9, 2013, Petitioner filed a Petition for Writ of Habeas Corpus. (Doc. 1.) On October 15, 2013, the Court dismissed the petition, without prejudice, for failure to use the court-approved form and granted Petitioner 30 days to file an amended petition. (Docs. 4, 9.) On November 12, 2013, Petitioner filed the instant Amended Petition for Writ of Habeas Corpus, which alleging the following grounds for relief:

(1) "Petitioner was denied effective counsel for his defense at trial in violation of Amendment Six and Strickland v. Washington, 466 U.S. 688 (1984)." Specifically, he claims his trial counsel was ineffective for:

a. Failing to investigate alternative theories regarding "how DNA material could have been transferred through incidental casual contact" and failing to investigate "the State's expert witness' assertion that the DNA match is 1 in 9.3 trillion Caucasians";

b. Failing to inform trial court that two defense witnesses were "threatened and intimidated" by the victim's father;

c. Failing to discuss defense strategies with Petitioner, meeting with Petitioner only twice before trial, and failing to discuss strengths and weaknesses of case with Petitioner;

d. Failing "to challenge the admissibility of the DNA evidence" found on the victim's underwear;

e. Failing "to present witnesses to impeach the testimony of the alleged victim and his parents at trial";

f. Failing "to present an expert witness to refute the State's expert DNA witnesses"; and

g. Failing to object during closing argument to prosecutor's statements "regarding Petitioner's failure to take a polygraph and his being a successful pedophile."

(2) "Petitioner was denied effective assistance of counsel during the critical stage of proceedings of a plea offered by the State violating Amendment 6; Strickland v. Washington, 466 U.S. 688 (1984); Lafler v. Cooper, 566 U.S. ___ (2012); and Martinez v. Ryan, 566 U.S. ___ (2012)."

(3) "Petitioner was denied effective assistance of counsel during the initial-review collateral review in which an ineffective assistance of trial level counsel was presented for the first time, violating Amendments 6 & 14; Martinez v. Ryan, 566 U.S. ___ (2012); Strickland v. Washington, 466 U.S. 688 (1984)."

(4) The prosecutor committed misconduct and violated the Fifth and Fourteenth Amendments by:

a. Admitting "evidence that could not be proven, beyond reasonable doubt, that it belonged to the alleged victim, nor that it was clothing worn at the time by the alleged victim at the time of the alleged assault";

    b. "Prosecution's closing remarks of Petitioner's failure to take a polygraph caused the jury to believe he had something to hide";

    c. "Prosecution's reference to Petitioner being a successful pedophile was prejudicial and based on facts not entered into the record"; and

    d. Failing to investigate claim that two defense witnesses had been threatened by the victim's father.

(Doc. 5.) Respondents filed an Answer on April 18, 2014 (Doc. 15), and Petitioner filed a Reply on May 9, 2014 (Doc. 16).

**DISCUSSION**

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and must be dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.

- 8 -

28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition is not filed until later. See Isley v. Arizona Department of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). However, the time between a first and second application for post-conviction relief is not tolled because no application is "pending" during that period. See Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The petitioner was "not entitled to tolling during the interval between the completion of one round of state collateral review and the commencement of a second round of review."). Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

The statute of limitations under AEDPA is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" and prevented him from filing a timely petition. Id. at 648-49 (quoting Pace, 544 U.S. at 418).

The Court finds that Petitioner's Amended Petition for Writ of Habeas Corpus is untimely. The Arizona Supreme Court denied review of Petitioner's direct appeal on May 3, 2007. (Exh. S.) Petitioner convictions became final 90 days later – on August 1, 2007 –

1 when the time expired for filing a petition for writ of certiorari in the United States Supreme
2 Court. See 28 U.S.C. § 2244(d)(1)(A) (providing AEDPA statute of limitations begins "the
3 date on which the judgment became final by the conclusion of direct review or the expiration
4 of the time for seeking such review"); Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010)
5 ("When, on direct appeal, review is sought in the state's highest court but no petition for
6 *certiorari* to the United States Supreme Court is filed, direct review is considered to be final
7 when the *certiorari* petition would have been due, which is 90 days after the decision of the
8 state's highest court.").

9       Petitioner, however, filed his PCR notice before his convictions became final. (Exh.
10 V.) Because the PCR notice was properly filed, it started tolling AEDPA's 1-year statute of
11 limitation before it started to run. The first PCR proceeding was "pending" and tolled
12 AEDPA's statute of limitations until February 4, 2009, when the La Paz County Superior
13 Court denied relief in the PCR proceeding. (Exh. LL.) Petitioner did not take any further
14 action in this PCR proceeding. Because nothing was pending after the trial court's decision,
15 the statute of limitations began running the next day. See Hemmerle v. Schriro, 495 F.3d
16 1069, 1074 (9th Cir. 2007) (statute of limitations was tolled until date on which notice of
17 post-conviction relief was dismissed where no petition for review was filed). The limitations
18 period continued running uninterrupted for one year – until February 5, 2010 – when it
19 expired.

20       Petitioner's subsequent PCR proceeding was filed almost three years after the
21 limitations period had expired (Exh. MM), and, thus, did not toll the limitations period. See
22 Ferguson, 321 F.3d at 823 ("[S]ection 2244(d) does not permit the re-initiation of the [federal
23 1-year] limitations period that has ended before the state petition was filed.").

24       In sum, Petitioner filed the instant habeas petition well over three years after the
25 1-year limitations period expired.[4] The Amended Petition is therefore untimely.

---

[4] The Court has applied the date that Petitioner initiated his habeas proceeding – August 15, 2013.

- 10 -

The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

Petitioner has not proffered any extraordinary circumstance that would justify equitable tolling or demonstrated that an external impediment hindered the diligent pursuit of his rights. And, Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

To the extent Petitioner suggests that Martinez v. Ryan, ___ U.S.___, 132 S. Ct. 1309 (2012), applies in this context, he is mistaken. Martinez applies only to excusing procedural default and/or lack of exhaustion in state court. See id. at 1315. In Martinez, the Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective

- 11 -

> assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320. Thus, Martinez has no application to the statute of limitations in the AEDPA which governs Petitioner's filing in federal court. See McKinnie v. Long, 2013 WL 1890618 (C.D. Cal. Apr. 5, 2013) ("*Martinez* dealt solely with the state procedural default doctrine, which is entirely different from the issue presented here of whether petitioner's claims are time barred under the AEDPA statute of limitations."); Moore v. Williams, 2013 WL 271454 at *5 (D. Nev. Jan. 23, 2013) ("Petitioner has conflated the federal timeliness question with the issue of whether a claim in the federal petition is barred due to procedural default in state court."). Accordingly, Martinez does not present a basis for equitable tolling. Petitioner's habeas petition is untimely.

## CONCLUSION

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 5) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen

1  days within which to file a response to the objections. Failure timely to file objections to the
2  Magistrate Judge's Report and Recommendation may result in the acceptance of the Report
3  and Recommendation by the district court without further review. <u>See</u> <u>United States v.</u>
4  <u>Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any
5  factual determinations of the Magistrate Judge will be considered a waiver of a party's right
6  to appellate review of the findings of fact in an order or judgment entered pursuant to the
7  Magistrate Judge's recommendation. <u>See</u> Rule 72, Federal Rules of Civil Procedure.

8  DATED this 22nd day of July, 2014.

*[signature]*
Michelle H. Burns
United States Magistrate Judge